IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HURON CONSULTING GROUP INC. and HURON CONSULTING SERVICES LLC, Plaintiffs, vs. VADIM GORELIK and KYLE C. SCHMID, Defendants. | Case No. 2021-CV-_____ Honorable _____ |

## COMPLAINT

Plaintiffs Huron Consulting Group Inc. ("Huron Inc.") and Huron Consulting Services LLC ("Huron LLC") (collectively, "Huron") for their Complaint against Defendants Vadim Gorelik ("Gorelik") and Kyle C. Schmid ("Schmid") (collectively, "Defendants"), state as follows:

## NATURE OF THE ACTION

1. This is an action by Huron for monetary damages against its former employees, Gorelik and Schmid, resulting from Defendants' wrongful solicitation of Huron's clients and employees, impairment of Huron's business relationships and expectancies, and destruction of Huron's property in violation of their employment contracts and in breach of their duties of loyalty owed to Huron.

2. When Defendants became employees of Huron LLC, they entered into contracts with Huron Inc. wherein they agreed, among other things: (1) to not solicit or induce Huron's clients to stop doing business with Huron; (2) to not induce Huron's employees to terminate their employment with Huron; and (3) to return the Huron documents and tangible property that Huron issued to them upon the termination of their employment.

3. While still employed by Huron LLC, Defendants secretly formed a consulting company that directly competes with Huron, engaged in conduct that caused Huron clients to end projects with Huron or unnecessarily increase costs for Huron; and solicited Huron employees to leave Huron and join their newly formed venture. As a result of Defendants' wrongful and unlawful conduct, Huron has been injured and is entitled to monetary damages.

## THE PARTIES

4. Plaintiff Huron LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Chicago, Illinois, and is a subsidiary of Huron Inc.

5. Plaintiff Huron Inc. is the parent company of Huron LLC. Huron Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Chicago, Illinois.

6. Defendant Gorelik is an individual who resides and is domiciled in the state of Texas. Gorelik was employed as a Salesforce Consulting Director in Huron LLC's Enterprise Solutions and Analytics ("ESA") service line. Gorelik resigned on May 13, 2021 and his last day at Huron LLC was May 14, 2021.

7. Defendant Schmid is an individual who resides and is domiciled in the state of Texas. Schmid was employed as a Salesforce Consulting Manager in Huron LLC's ESA service line. Schmid resigned on May 13, 2021 and his last day at Huron LLC was May 28, 2021.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, because the parties have diversity of citizenship and the amount in controversy exceeds $75,000.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Illinois (including Huron's execution of the Non-Disclosure, Non-Solicitation and Invention Assignment Agreements) and a substantial part of the property that is the subject of the action is situated in the Northern District of Illinois.

10. Furthermore, pursuant to the Non-Disclosure, Non-Solicitation, and Invention Assignment Agreements that they entered into with Huron Inc., Defendants "agree[d] to submit to the personal jurisdiction of any state or federal court in Illinois." Ex. A at ¶ 9.

## FACTS COMMON TO ALL COUNTS

### I. Defendants Form a Competing Company While Employed by Huron.

11. Huron is a global professional services consulting firm committed to achieving sustainable results in partnership with its clients. Huron's expertise in strategy, operations, advisory services, technology, and analytics help drive lasting and measurable results for its clients in the healthcare, higher education, life sciences, and other commercial sectors.

12. As it has emphasized in its annual 10-K reports filed with the United States Securities and Exchange Commission, Huron's "success depends largely on [its] general ability to attract, develop, motivate, and retain highly skilled professionals. Further, [Huron] must successfully maintain the right mix of professionals with relevant experience and skill sets as [it] continues to grow, as [it] expand[s] into new service offerings, and as the market evolves. The loss of a significant number of [Huron's] professionals, the inability to attract, hire, develop, train, and retain additional skilled personnel, or failure to maintain the right mix of professionals could have a serious negative effect on [Huron], including [its] ability to manage, staff, and successfully complete [its] existing engagements and obtain new engagements."

13. Huron LLC hired Defendants to work in the Salesforce.com Inc. ("Salesforce") division of its ESA service line. In their work for Huron LLC, Defendants focused on providing consulting expertise to Huron's higher education clients such as universities, colleges, and non-profit entities throughout North America and Europe.

14. As conditions of their employment with Huron LLC, Gorelik signed a Non-Disclosure, Non-Solicitation, and Invention Assignment Agreement with Huron Inc. on June 29, 2016, and Schmid signed a Non-Disclosure, Non-Solicitation, and Invention Assignment Agreement with Huron Inc. on January 25, 2017 (the "Agreements"). *See* Ex. A. Among other things, these Agreements barred Defendants from soliciting Huron's clients and employees to end their relationships with Huron and required Defendants to return company property upon the termination of their employment with Huron. *Id*.

15. For years, Defendants worked together and with other consultants in Huron's ESA service line selling, implementing, and providing consulting services related to Salesforce software to Huron's clients, primarily in the higher education sector.

16. Defendants' duties and responsibilities as a Director and Manager in Huron's ESA service line included, among other things: (a) developing, maintaining, and servicing new and existing client relations; (b) interacting with Huron customers to sell, market, and provide consulting services related to Salesforce; (c) supervising Huron employees and leading Salesforce project teams in Huron's ESA service line; and (d) developing and maintaining Huron's relationships with Salesforce, subcontractors, vendors, and other software partners. As a Director, Gorelik was often the primary point of contact between Huron and its customers.

17. As a Director and Manager for Huron, Defendants gained valuable skills, training, and knowledge about selling, implementing, and providing consulting services related to

4

Salesforce. For example, Defendants gained knowledge of Huron's pricing formulas and procedures for creating proposals for clients and prospective clients based upon the scope and specifications provided for the projects. Defendants also learned valuable techniques, models, and strategies that can be employed to enhance the success and profitability of a Salesforce implementation.

18. During their employment with Huron, Defendants were tasked with cultivating new business relationships and maintaining existing business relationships on Huron's behalf. To carry out their tasks and duties, Defendants received and used proprietary and confidential information from Huron.

19. On or about April 5, 2021, while still employed by Huron, Defendants formed a business called Tondro Consulting, LLC ("Tondro") based in Austin, Texas and began secretly competing with Huron. Tondro provides Salesforce consulting and implementation services specifically for higher education clientele.

## II. Defendants Begin Competing with Huron by Soliciting Huron Employees and Clients.

20. Pursuant to the Agreements, Defendants agreed that during their employment with Huron and for twelve months thereafter, they would "not, directly or indirectly, induce or attempt to induce any employee of the Company or any person who had been in the employ of the Company within six months prior to [their] termination date to terminate his/her employment with the Company." Ex. A at ¶ 5. Defendants also agreed that they would not "hire or assist in the hiring of any such [Huron] employee by any firm or entity of which [they are] an employee, owner, partner or consultant." *Id*.

21. Before Defendants resigned from Huron, and despite their Agreements and their duties of loyalty to Huron, Defendants successfully recruited two Huron employees—Lucey

5

Zhang ("Zhang"), and Julie Ngo ("Ngo")—to join them in working at Tondro. Defendants worked closely with Zhang and Ngo on Salesforce implementations while the four were Huron employees. Defendants also solicited, but were unsuccessful in convincing, a third Huron employee to join their new venture ("Employee A").

22. On or about April 5, 2021, and unbeknownst to Huron at the time, Defendants met with Zhang, Ngo, and an Austin-based attorney named Natalie Lynch ("Lynch"). Based on information and belief, Defendants met with Zhang, Ngo, and attorney Lynch to formally establish Tondro and strategize about how to further compete against Huron.

23. Before she resigned from Huron, Zhang told a Huron employee ("Employee B") that Tondro had already secured a former Huron client ("Client A") as Tondro's first client and that the new client would keep Tondro profitable and operational for a year.

24. Like the Defendants, Zhang and Ngo resigned from Huron on May 13, 2021. Zhang and Ngo's last days with Huron were both May 31, 2021. Zhang and Ngo are now partners with Defendants at Tondro.

### III. Defendants Imperil Huron's Relationships with Its Clients.

25. Before their departures from Huron LLC, Defendants were working together on a project for a Huron client that is a public university ("Client B"). The contract between Huron and Client B was executed on or about September 29, 2020. The contract was for a Salesforce discovery and design project that was expected to last 3-weeks from start to finish. Huron expected that the discovery and design project would lead to future phases of Salesforce software implementations for Client B. Huron also expected to be given priority for a separate, larger Salesforce implementation project for Client B if the discovery and design project was completed successfully. It is Huron's typical experience, and common in the software consulting industry,

6

that a successful discovery and design project will lead to clients engaging Huron for additional phases of Salesforce consulting and implementations.

26. Huron assigned Gorelik to lead the discovery and design project and Gorelik worked with Schmid, Zhang, and Ngo on the project. In May 2021, Gorelik still had not completed the initial discovery and design project for Client B even though the project was only supposed to have a 3-week duration. In early May 2021, in order to conceal his nonfeasance, Gorelik sent Client B "a corrupt PDF pretending like it's the deliverable." Gorelik informed Schmid, Zhang, and Ngo of his misconduct, but he did not apprise his superiors or Client B of his misconduct.

27. Gorelik's inaction on the project has put future phases of Huron's anticipated work for Client B at serious risk, and Huron had to write off charges for the hours needed to correct Gorelik's failure on the project. Huron assigned another employee to complete the initial discovery and design project for the client that Gorelik never finished. Gorelik's misconduct will likely prevent Huron from working on future phases and engagements for Client B, which are valued at hundreds of thousands of dollars.

28. In May 2021, a client in Canada ("Client C") awarded Huron a contract to optimize the admissions and recruiting process for Client C using Salesforce.

29. Huron positioned Gorelik as the Engagement Lead and Solution Architect and Zhang as the Technical Architect for Huron's Salesforce implementation for Client C. However, since Gorelik and Zhang left Huron as a result of Defendants' misconduct, Client C canceled the contract previously awarded to Huron. The client canceled the contract because it believed awarding the contract to Huron was too risky given the departures of Gorelik and Zhang. The contract award was worth several hundreds of thousands of dollars to Huron before it was canceled.

### IV. Defendants Destroy Huron's Property.

30. Pursuant to Defendants' Agreements with Huron, "[a]ll documents, forms, techniques, methodologies, ideas, inventions, writings, software and Confidential Information and all intellectual property rights associated therewith created or conceived by [Defendants] alone or with others with the Company [hereinafter, Huron] that relate to the Company's business or clients or work assigned to [Defendants] by the Company (collectively, "Materials") constitute 'work made for hire' and are the exclusive property of the Company." Ex. A at ¶ 8. Defendants knew that "[a]ll documents and other tangible property relating in any way to the business of the Company are the exclusive property of the Company (even if [Defendants] authored or created them)." *Id.* at ¶ 3.

31. By signing the Agreements, Defendants "agree[d] to return all such documents and tangible property to the Company upon termination of employment or at such time as the Company may request." *Id*.

32. In addition, Huron provided written notice to Defendants after their May 13th resignations instructing them to preserve all materials relevant to their formation of any competitive business, their communications with Huron employees, their communications with Huron's clients, and their use or transfer of any Huron documents and information. *See* Ex. B. From review of emails sent from Defendants to other Huron employees, it is evident that Defendants used the laptops issued to them by Huron to 1) form Tondro, 2) communicate with Huron's employees, 3) communicate with Huron's clients, and 4) store Huron's documents and proprietary information.

33. Despite their contractual agreements and the instruction from Huron's legal counsel, Defendants applied factory resets to their Huron-issued laptops before returning them to

8

Huron's headquarters in Chicago, Illinois. As a result of the factory resets performed by Defendants, all the data, documents, and information that was once stored on Defendants' Huron-issued laptops have been permanently deleted. If Defendants made copies of the contents of their Huron-issued laptops and transferred the copied information to personal electronic devices before applying the factory reset (which is not uncommon in this type of case), evidence of the Defendants copying Huron's documents and information stored on their Huron-issued laptops to personal devices was deleted from their Huron-issued laptops when they performed the factory resets.

## COUNT I
## BREACH OF THE AGREEMENTS
(Huron Inc. v. Defendants)

34. Huron Inc. incorporates by reference, as if fully set forth herein, the allegations from paragraphs 1 through 33 of its Complaint.

35. Defendants signed Agreements with Huron Inc. that prohibit Defendants from, among other things: (a) directly or indirectly inducing or attempting to induce Huron employees to terminate their employment with Huron; (b) hiring or assisting in hiring Huron employees at a company where Defendants are employees, owners, partners, or consultants; and (c) destroying Huron's documents or tangible property.

36. As alleged herein, Defendants breached the Agreements by, among other things:

    a. Inducing or attempting to induce Huron employees to terminate their employment with Huron and instead work for Tondro;

    b. Hiring or assisting in hiring Huron's employees to work at Tondro;

    c. Applying factory resets to the laptops issued to them by Huron, and as a result, not returning to Huron all the documents, forms, techniques, methodologies, ideas, inventions, writings, software and Confidential

Information and intellectual property that belonged to Huron and was stored on the laptops issued to them;

37. The Agreements between Huron Inc. and Defendants are valid and enforceable contracts supported by consideration. Huron Inc. has fully performed its obligations under its Agreements with Defendants.

38. The restrictions in the Agreements do not impose any undue hardships on Defendants.

39. Defendants' breaches of the Agreements compromised (i) Huron Inc.'s interest in maintaining a stable work force, (ii) Huron Inc.'s interest in maintaining its long-standing relationships with its clients, and (iii) Huron Inc.'s interest in maintaining the value of its goodwill and intangible assets.

40. As a direct and proximate result of Defendants' breaches of the Agreements, Huron Inc. has sustained and is likely to continue to sustain damages in the form of lost profits and customer relationships; costs and expenses in hiring and training new employees; increased costs in retaining employees; increased costs and expenses in repairing existing customer relationships; and injury to its goodwill and reputation, resulting in, among other things, loss of revenue and profits and diminished goodwill.

## COUNT II
## BREACH OF THE DUTY OF LOYALTY
(Huron LLC v. Defendants)

41. Huron LLC incorporates by reference, as if fully set forth herein, the allegations from paragraphs 1 through 40 of its Complaint.

42. By reason of their employment and positions with Huron LLC, Defendants owed Huron LLC an undivided duty of loyalty, and duties of honesty and candor in the performance of their services.

43. While still employed by Huron LLC, Defendants breached those duties by, among other things: (1) soliciting or otherwise contacting at least one Huron customer to promote, market or sell Tondro's consulting services instead of Huron's; (2) inducing and attempting to induce Huron employees to terminate their employment with Huron to instead join Tondro; (3) hiring or assisting in hiring Huron employees to work at Tondro; (4) interfering with Huron's business relationships and expectancies; and (5) destroying company property.

44. By engaging in this conduct, Defendants intentionally and without cause breached the duties that they owed to Huron LLC.

45. Huron LLC has incurred and will continue to incur damages as a result of Defendants' breaches of their duties of loyalty, and Huron LLC is entitled to all remedies that this Court may deem just and proper, including, without limitation, the return to Huron LLC of all compensation paid to Defendants from the date of their first disloyal act, as well as all other damages suffered by Huron LLC as a result of Defendants' breaches of their duties to Huron LLC.

46. The harm and damages caused to Huron LLC are the result of Defendants' intentional malice, trickery, and deceit. Defendants' misconduct warrants the imposition of punitive damages to achieve punishment and deterrence.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Huron Consulting Group Inc. and Huron Consulting Services LLC, respectfully request the following relief:

1. An Order awarding actual and compensatory damages, with pre-judgment interest and post-judgment interest, for Defendants Vadim Gorelik's and Kyle C. Schmid's breaches of their Non-Disclosure, Non-Solicitation, and Invention Assignment Agreements with Huron Inc.;

2. An Order awarding actual and compensatory damages and disgorgement of compensation, with pre-judgment and post-judgment interest, for Defendants Vadim Gorelik's and Kyle C. Schmid's breaches of their fiduciary duties owed to Huron LLC;

3. An Order awarding punitive damages against Defendants Vadim Gorelik and Kyle C. Schmid for their willful breaches of their fiduciary duties; and

4. All such other relief as the Court deems just and proper.


Dated: July 16, 2021

          */s/ Christopher J. Barber*
*One of the Attorneys for Plaintiffs Huron Consulting Services LLC and Huron Consulting Group Inc.*

Christopher J. Barber (ARDC # 6192190)
Jonathan D. Miller (ARDC # 6297204)
William B. McAllister (ARDC # 6315562)
Williams Montgomery & John Ltd.
233 S. Wacker Dr., Ste. 6800
Chicago, IL 60606
Phone: 312.443.3200
Fax: 312.630.8500